IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-00915-PAB-CBS

LOKEN-FLACK, LLC,

     Plaintiff,

v.

RICHARD J. STONER,
LYRIC TURNER, and
AGRIHOUSE BRANDS, LTD,

     Defendants.

_____

**ORDER**
_____

     This matter is before the Court on Defendants' Motion for Partial Summary Judgment Pursuant to Fed. R. Civ. P. 56(c) [Docket No. 52] filed jointly by defendants AgriHouse Brands, Ltd. ("AgriHouse Brands"), Richard J. Stoner, and Lyric Turner (collectively "defendants") and the Motion for Summary Judgment [Docket No. 53] filed by plaintiff Loken-Flack, LLC.  Plaintiff asserts subject matter jurisdiction pursuant to 28 U.S.C. § 1331, § 1338, and § 1367.[1]

**I. BACKGROUND**[2]

     This case arises out of the bankruptcy proceeding involving AgriHouse, Inc. ("AgriHouse").  AgriHouse was formed in 2000 and, since that time, appears to have

_____

    [1]Although plaintiff's complaint also cites § 1441 and § 2201, both statutes are inapplicable.  Section 1441 governs the removal of civil actions and § 2201 is not an independent basis for asserting jurisdiction.  *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950).

    [2]The following facts are undisputed unless otherwise indicated.

been involved in the development and marketing of agricultural and residential pesticides and related products.  Docket No. 52 at 2, ¶ 1.  Plaintiff appears to have been involved in the marketing of AgriHouse products.  *See infra* p. 4.  Mr. Stoner served as a shareholder and director of AgriHouse.  *Id.* at 2, ¶ 2.  Mr. Stoner and Ms. Turner own AgriHouse Brands, an entity incorporated in 2011 that sells product brands purchased from AgriHouse.  Docket No. 75-1 at 1; Docket No. 55 at 8, n. 7; Docket No. 53-3 at 19, p. 19:5-17; *id.* at 59, p. 59:9-12.  On March 3, 2006, AgriHouse, Mr. Stoner, and Joyce K. Stoner, Mr. Stoner's wife, received a business loan from Adams Bank & Trust Company ("Adams Bank").  Docket No. 53 at 2, ¶ 1; Docket No. 53-1 at 17.  On December 14, 2009, AgriHouse and Mr. Stoner received a second business loan from Adams Bank.  Docket No. 53 at 2, ¶ 1; Docket No. 53-1 at 33.  The 2006 loan was secured with, as relevant here, AgriHouse's inventory, chattel paper, accounts receivable, equipment and general intangibles.  Docket No. 53-1 at 48.[3]  The 2009 loan was secured with AgriHouse's and Mr. Stoner's inventory, chattel paper, accounts, equipment, and general intangibles.  Docket No. 53 at 2, ¶ 2; Docket No. 53-1 at 40. The parties agree that, although two loan modifications took place, neither modification released any collateral and Adams Bank required any change in collateral to be in writing.  Docket No. 85 at 6, ¶¶ 7-8.

In 1995, Vanson L.P. registered the trademark "YEA!" with the United States

---

[3]The 2006 loan appears to be secured by collateral listed on a 2006 financing statement, multiple security agreements, and a deed of trust dated 3/3/2005.  Docket No. 53-1 at 15.  The record appears to contain only the 2006 UCC financing statement relating to AgriHouse assets.  Thus, it is unclear whether the 2006 loan was also secured with assets belonging to Mr. and Ms. Stoner.

Patent and Trademark Office.  Docket No. 52 at 2, ¶ 4.  The mark relates to "yield enhancing organic agents for use in agriculture."  Docket No. 52-3 at 2.  On July 11, 2006, AgriHouse purchased the YEA! trademark.  *Id.*; Docket No. 52 at 2, ¶ 3.  On September 4, 2008, the United States Environmental Protection Agency issued to AgriHouse a Notice of Pesticide Registration, EPA Reg. Number 83729-1 (the "Registration"), for YEA! Yield Enhancing Agent.  Docket No. 52-4 at 2.[4]  The label indicates that the YEA! product was designed for use on grass, trees, shrubs, and flowers and as a seed treatment on crops.  *Id.* at 4.  The parties do not dispute that, as of September 4, 2008, AgriHouse owned the YEA! trademark and the Registration.  Docket No. 52 at 3, ¶ 7; Docket No. 58 at 2, ¶ 7.

Defendants claim that, on January 21, 2009, AgriHouse transferred ownership of the Registration, along with other related tangible and intangible property, to Mr. Stoner as compensation for unpaid wages and expenses.  Docket No. 52 at 3, ¶¶ 8-9; Docket No. 52-5, at 2-3.[5]  Defendants also claim that, on June 2, 2009, Mr. Stoner sold the

---

[4]Entities who wish to distribute or sell pesticides, or substances intended for pesticide purposes, must apply to register the substance with the EPA.  40 C.F.R. § 152.15.  The applicant must submit the pesticide's formula, a proposed label detailing all claims made for the pesticide and directions for use, and a description of the studies upon which the claims are based.  2 Nicholas A. Robinson et al., *Comparative Environmental Law & Regulation* § 56:278 (2014).  If the registration application is approved, the applicant is issued a Notice of Registration.  *See, e.g.*, Docket No. 52-4. The registrant may only sell or distribute a registered product in accordance with the composition and labeling approved by the EPA as set forth in the Notice of Registration. § 56:290.

[5]The list of property defendants claim was conveyed to Mr. Stoner also purports to include "Trademarks."  *Id.* at 3.  However, neither party appears to claim that the YEA! mark was, at any time, transferred to Mr. Stoner or subsequently transferred to Ms. Turner.

Registration and same "tangible and intangible property" to Ms. Turner for $3,200.

Docket No. 52 at 3, ¶ 10; Docket No. 52-6, at 2-3.  Plaintiff disputes that any transfer of

the Registration took place, arguing that AgriHouse had no authority to transfer

collateral and that the EPA, as part of an agency review, determined that the

Registration was not transferred to Mr. Stoner.  Docket No. 58 at 2, ¶¶ 8-9.

On May 27, 2011, AgriHouse filed a voluntary petition under Chapter 7 of the

United States Bankruptcy Code, *In re AgriHouse*, No. 11-22734-HRT (Bankr. D. Colo.

2011).  Docket No. 85 at 6, ¶ 1.[6]  The bankruptcy petition listed plaintiff as an

unsecured creditor with two claims dated 2002 and 2005 relating to "marketing

agreement to market products of AgriHouse, Inc."  *In re AgriHouse* (Docket No. 1 at

35).  On June 24, 2011, Adams Bank filed a Motion for Relief From Stay in the

AgriHouse proceeding.  Docket No. 85 at 6, ¶ 3.  The motion was unopposed and, on

August 10, 2011, the court granted Adams Bank "relief from stay in order to proceed to

take possession of, by way of the appointment of a receiver and otherwise, and to

foreclose on the collateral . . . [,]" described as "**Personal Property Pledged in**

**Security Agreement dated 12.14.09 and UCC Financing Statement**."  *In re*

---

[6]On June 7, 2011, Mr. and Mrs. Stoner filed a voluntary petition under Chapter 7
of the United States Bankruptcy Code, *In re Stoner*, No. 11-23577 (Bankr. D. Colo.
2011).  Docket No. 85 at 6, ¶ 2.  On July 5, 2011, the trustee stated: "there is no
property available for distribution from the estate over and above that exempted by
law."  *In re Stoner*, July 5, 2011 Text Entry.  There is no indication that the Stoners'
personal bankruptcy is at issue in resolving the instant motions.  Therefore, all
references to bankruptcy proceedings are to *In re AgriHouse* unless otherwise
indicated.

*AgriHouse* (Docket No. 23 (emphasis in original)).[7]  The AgriHouse bankruptcy case

remains open.

On October 17, 2011, Mr. Stoner, on behalf of AgriHouse, executed a Voluntary

Surrender of Collateral and Waiver of Rights Agreement (the "Agreement").  The

Agreement describes the subject assets as follows:

> "Borrower" acknowledges that "Borrower" executed and delivered to <u>Adams
> Bank and Trust</u>, a Promissory Note . . . dated December 14, 2009 and a
> Promissory Note . . . dated March 3, 2006, "Notes" which were secured by
> Registered Patents:
> > No. 6167652; Method for treating cotyledonous plants;
> > No. 6807770; Low pressure aeroponic growing apparatus;
> > No. 5726123; Method for treating cotyledonous plants; and
> > The Borrower's ownership interest in Registered Patent No. 6192988;
> tuber planting system comprising chitin or chitosan, as Collateral for said
> Note . . . .

Docket No. 53-2 at 7 (emphasis in original).  The Agreement stated that AgriHouse

"voluntarily surrenders Collateral to 'Lender'" and "acknowledges that 'Lender' takes

possession of the Collateral."  *Id.*  The parties dispute the effect of the Agreement.

Plaintiff argues that the Agreement functioned as a voluntary surrender of all AgriHouse

assets that were used to secure the Adams Bank loans.  Docket No. 53 at 4, ¶ 11.

Defendants argue that the Agreement transferred to Adams Bank only those assets

specifically mentioned in the Agreement.  Docket No. 76 at 3, ¶ 11.

Plaintiff claims that Adams Bank transferred all AgriHouse assets to plaintiff.

Docket No. 53 at 4, ¶ 12.  Plaintiff, however, fails to explain how or when this took

place.  Plaintiff cites to the affidavit of John Busby, commercial loan officer for Adams

---

[7]Citations to the record in the AgriHouse bankruptcy proceeding will follow this
format.

Bank, which states, in part, that all items "listed on Exhibits 2 and 3 to the Deposition that are legally included under the definition of Inventory, Chattel Paper, Accounts, Equipment and General Intangibles . . . secured the loans from the Bank to AgriHouse" and that "all items of Collateral we had were released from the Automatic Stay in the Bankruptcy and were transferred to Loken-Flack, LLC."  Docket No. 53-2 at 2-3, ¶¶ 3, 10 (citing Docket No. 56-2).  Mr. Busby does not indicate what items of collateral were in the bank's possession at the time of the transfer.  On March 29, 2012, plaintiff filed transfer of claim notices for claim numbers 1-1 and 2-1, which indicate that plaintiff acquired Adams Bank's claims against AgriHouse through transfer.  *In re AgriHouse* (Docket Nos. 29, 30).[8]  The same day, plaintiff's counsel filed an entry of appearance and request to receive notices in the AgriHouse bankruptcy case.  *Id.* (Docket No. 31).

The parties do not dispute that the Registration was not pledged as collateral or subject to a security interest.  Docket No. 53 at 4, ¶ 14.  On June 6, 2012, the trustee filed a motion to authorize the sale of the Registration, including "data packages, manufacturing methods and methods of analysis."  *In re AgriHouse* (Docket No. 32).  After notice was served on AgriHouse's creditors and other interested parties, *id.* (Docket No. 36), on July 11, 2012, the court granted the trustee's motion to sell the Registration to plaintiff for $2,500.  *Id.* (Docket No. 38).  Plaintiff requested that the EPA transfer the Registration to plaintiff.[9]  Docket No. 53 at 5, ¶ 20.  Defendants appear to

---

[8]This is consistent with the bankruptcy trustee's indication that plaintiff "purchased the [promissory] Note of Adams Bank & Trust . . . ."  *In re AgriHouse* (Docket No. 32 at 2, ¶ 8).

[9]A registrant is permitted to transfer the registration of a product to another entity and, provided the transfer receives EPA approval, the registered product may be

6

argue that Ms. Turner, as the true owner of the Registration, was entitled to, but did not receive, notice that the trustee intended to sell the Registration.  Docket No. 76 at 3, ¶ 16; Docket No. 76-3 at 2, ¶ 4.  However, defendants do not indicate why Ms. Turner may have been entitled to notice.  Ms. Turner was not listed as a creditor or interested party in the AgriHouse bankruptcy and, as a result, was not served with notice from the trustee.  *See generally In re AgriHouse* (Docket No. 36).  Defendants did not ask the court to reconsider the sale, no appeal has been filed, Docket No. 53 at 5, ¶ 17, and there is no indication that Ms. Turner filed an adversary proceeding in the AgriHouse bankruptcy contesting the sale.

On June 6, 2012, the trustee filed a notice of intent to abandon the YEA! trademark, believing that the mark was burdensome to the estate and of inconsequential value.  *In re AgriHouse* (Docket No. 35).  Notice was served on creditors and interested parties, including plaintiff and plaintiff's counsel.  *Id.* (Docket No. 36).  Plaintiff does not claim that it objected to the notice of intent to abandon and the record does not indicate that any objections were filed.

On October 7, 2012, Mr. Stoner contacted the EPA requesting that the agency void the transfer of the Registration, claiming that the Registration was transferred to

---

distributed and sold by the transferee without applying for a new registration.  40 C.F.R. § 152.135.  Entities seeking a transfer must submit a document signed by the transferor and transferee describing the general nature of the underlying transaction.  *Id.*  The transferor must submit a notarized statement affirming that the transferor is authorized to transfer the registration, that no court order prohibits the transfer, and that the transfer is authorized under the law.  *Id.*  The transfer becomes effective upon the date of EPA approval.  *Id.*

Ms. Turner prior to AgriHouse's bankruptcy filing.  Docket No. 55 at 8.[10]  Plaintiff

responded, arguing that the EPA should deny Mr. Stoner's request.  *Id.* at 8-10.  The

EPA declined to void the transfer, reasoning that it had no record of a transfer of the

registration to Ms. Turner and that it had no authority to reverse the bankruptcy court's

order authorizing sale of the registration.  *Id.*  On January 7, 2013, Mr. Stoner again

contacted the EPA, requesting that the agency reconsider its decision.  Docket No. 56

at 1.[11]  On January 23, 2013, the EPA denied Mr. Stoner's request, stating, in part, that

the "EPA is not the proper forum to contest a ruling by a United States Bankruptcy

Judge."  *Id.* at 3.

On April 10, 2013, plaintiff filed this action.  Docket No. 1.  Plaintiff brought

claims against defendants[12] for trademark infringement under the Lanham Act, 15

U.S.C. § 1051 *et seq.*, intentional interference with potential business advantage,[13]

breach of contract, and breach of the covenant of good faith and fair dealing.  Docket

---

[10]Defendants do not explain why Mr. Stoner, rather than Ms. Turner, chose to contest the matter with the EPA.

[11]Mr. Stoner appears to have argued throughout his communications with the EPA that the EPA's January 26, 2012 letter granting a name change from AgriHouse to "AgriHouse Brands Ltd." functioned as a transfer of the Registration.  *Id.* at 2.  However, as the EPA's response points out, a request to change the registrant's name pursuant to 40 C.F.R. § 152.122 does not also function as a transfer of the registration pursuant to 40 C.F.R. § 152.135.

[12]On January 20, 2014, the parties stipulated to the dismissal of defendant Ruth Eure.  Docket No. 69.

[13]In Colorado, this tort claim is more commonly referred to as "tortious interference with a prospective business relation" or "intentional interference with prospective business relations."  *See Amoco Oil Co. v. Ervin*, 908 P.2d 493, 500 (Colo. 1995); *MDM Grp. Assoc., Inv. v. CX Reinsurance Co. Ltd.*, 165 P.3d 882, 886 (Colo. App. 2007).

No. 1 at 7-9.  As relevant here, plaintiff sought a declaration that it is the sole owner of the Registration, an injunction directing defendants to turn over and/or execute relevant documents and to cease "marketing, advertising and sale of Assets," and damages.  *Id.* at 9-10.

On December 2, 2013, defendants filed a motion for partial summary judgment. Docket No. 52.  Defendants argue that plaintiff is not entitled to a declaration that it is the sole owner of the Registration, that plaintiff does not own the YEA! trademark, and that plaintiff's state law claims should be dismissed for failure to state a claim.  *Id.* at 7, 12-15.  On December 3, 2013, plaintiff filed a motion for summary judgment.[14]  Docket No. 53.  Plaintiff seeks an order declaring that it is the sole owner of the Registration and sole owner of the "Bank's Assets," a term which, although not clearly defined, appears to refer to all assets used to secure the Adams Bank loans.  *Id.* at 10-11. Plaintiff also argues that it is entitled to summary judgment on its state law claims.  *Id.* at 12.

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when

---

[14]Plaintiff's motion purports to seek "summary judgment on all claims," yet fails to mention, much less support, multiple claims.  For example, plaintiff's motion makes no mention of plaintiff's Lanham Act claim.  Moreover, despite the fact that both the complaint and Amended Final Pretrial Order contain allegations that defendants "injected themselves intentionally and improperly into the United States Patent and Trademark Office process concerning patent application number 11/517,035," Docket No. 85 at 3; Docket No. 1 at 9, plaintiff's motion for summary judgment fails to address defendants' actions or plaintiff's rights with respect to the United States Patent Application 11/517,035 (the "Application").  Thus, in resolving plaintiff's motion, the Court will consider only those claims actually mentioned in plaintiff's motion for summary judgment.

the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Bausman v. Interstate Brands Corp.,* 252 F.3d 1111, 1115 (10th Cir. 2001) (citing *Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557 (10th Cir.1994)). "In applying this standard, we view all facts and any reasonable inferences that might be drawn from them in the light most favorable to the nonmoving party."  *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).

## III.  ANALYSIS

### A.  Lanham Act Claims

Defendants move for summary judgment on plaintiff's trademark infringement

claim, brought pursuant to the Lanham Act, 15 U.S.C. § 1051, *et seq.*  Docket No. 52 at

14.  Although plaintiff's filings are not entirely clear, the dispute appears to concern

defendants' alleged use of the "YEA!" trademark.[15]  Plaintiff does not indicate whether it

brings its claim pursuant to 15 U.S.C. § 1114(1)(a) or § 1125(a).  However, in either

case, plaintiff is required to show that it has a protectable interest in the trademark.  *1-*

*800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013).

Defendants argue that plaintiff has no protectable interest in the YEA! mark because

the mark was abandoned by the bankruptcy trustee and, as such, reverted back to

AgriHouse.  Docket No. 52 at 16.  Plaintiff disputes whether the YEA! mark was part of

the bankruptcy estate when the trustee sought to abandon the asset, arguing that all

"assets pledged to the bank were released from the automatic stay and transferred to

LF.  Therefore, there was nothing for the bankruptcy trustee to abandon."  Docket No.

58 at 9 (citations omitted).[16]

The bankruptcy trustee, after notice and a hearing, "may abandon any property

of the estate that is burdensome to the estate or that is of inconsequential value and

benefit to the estate."  11 U.S.C. § 554(a).  Abandoned property ceases to be part of

_____

[15]Plaintiff's complaint and plaintiff's allegations in the Amended Final Pretrial Order fail to identify, with any specificity, the trademark that forms the basis of plaintiff's claims.  *See* Docket No. 1 at 7; Docket No. 85 at 2-4.  However, defendants' brief indicates that the "YEA!" trademark is at issue, which plaintiff does not dispute.  Docket No. 52 at 15; Docket No. 58 at 8.  Thus, the Court concludes that the YEA! mark forms the basis of plaintiff's claim for trademark infringement.

[16]Plaintiff does not argue that it acquired ownership of the YEA! mark by any other means.  *See Emergency One, Inc. v. Am. Fire Eagle Engine Co., Inc.*, 332 F.3d 264, 267 (4th Cir. 2003) ("At common law, trademark ownership is acquired by actual use of the mark in a given market.").

the estate and reverts to the debtor "as if no bankruptcy petition was filed [and] is *not*

property administered by the estate." *In re Dewsnup*, 908 F.2d 588, 590 (10th Cir.

1990) (emphasis in original).  Here, although plaintiff disputes whether the YEA! mark

was part of the estate at the relevant time, the parties do not dispute that the trustee

performed the necessary procedures under which to abandon the mark.  *See In re*

*Agrihouse* (Docket Nos. 35, 36).

Plaintiff's argument, in effect, asks this Court to rule that the bankruptcy court's

abandonment of the YEA! mark was in error – an abandonment that proceeded without

objection or direct appeal.[17]   The Court need not consider what, if any, practical effect

such an order from this Court would have on the litigants because the Court construes

plaintiff's argument as a collateral attack on a bankruptcy court decision.

> The judicial system's need for order and finality requires that orders of
> [bankruptcy] courts having jurisdiction to enter them be obeyed until
> reversed, even if proper grounds exist to challenge them.  A challenge for
> error may be directed to the ordering court or a higher court, as rules provide,
> but it may not be made collaterally unless it is based on the original court's
> lack of jurisdiction.

*Spartan Mills v. Bank of Am. Illinois*, 112 F.3d 1251, 1255 (4th Cir. 1997).  The binding

effect of bankruptcy orders depends only upon whether parties receive notice

"'reasonably calculated under all the circumstances, to apprise [them] of the pendency

of the action and afford them an opportunity to present their objections.'"  *State of Md.*

---

[17]Plaintiff's position with respect to this claim is inconsistent with the arguments
advanced in its own motion for summary judgment.  In support of its request for a
declaratory judgment, plaintiff argues that, "when someone receives notice from a
bankruptcy court that property is to sold, he or she may not sit back and do nothing if he
or she believes the court has no authority to sell it."  Docket No. 53 at 13.  Plaintiff does
not explain why this same reasoning should not be applied to preclude its trademark
ownership claim.

*v. Antonelli Creditors' Liquidating Trust*, 123 F.3d 777, 782-83 (4th Cir. 1997) (quoting

*Mullane v. Central Hanover Bank and Trust*, 339 U.S. 306, 314 (1950)).  Plaintiff does

not, strictly speaking, challenge the bankruptcy court's jurisdiction.  Thus, the only

remaining issue is whether plaintiff received notice and an opportunity to object.

Plaintiff was an unsecured creditor of AgriHouse and, as a result, was served with

notice of the trustee's proposal to abandon the YEA! mark.  *In re AgriHouse* (Docket

No. 1 at 35; Docket No. 36 at 4).  The record indicates that plaintiff's counsel was also

served with notice.  *Id.* (Docket No. 36 at 2).  Plaintiff does not challenge the content of

the notice and the bankruptcy record contains no indication that an objection or an

appeal was filed.  *See In re Furlong*, 450 B.R. 263, 269 (D. Mass. 2011) (finding that

trustee's notice clearly and unequivocally expressed intent to abandon a cause of

action).  Plaintiff fails to provide any basis upon which to conclude that the trustee's

abandonment of the YEA! mark does not bind plaintiff and, as such, defendants are

entitled to summary judgment on plaintiff's claim for trademark infringement.  *See*

*Antonelli*, 123 F.3d at 783 ("[T]he Taxing Authorities . . . had sufficient notice of both the

plan and the order confirming it to put them on legal notice . . . .  Having received that

noticed and failed to present any objection, they are now barred from collaterally

attacking the bankruptcy court's order.").[18]

---

[18]Even if plaintiff was permitted to mount a collateral attack on the abandonment
of the YEA! mark, abandonment is generally irrevocable except in three circumstances:
(1) where the trustee is given false or incomplete information about the asset
by the debtor, (2) where the debtor fails to list the asset altogether, and (3)
where the trustee's abandonment was the result of a mistake or
inadvertence, and no undue prejudice will result from revocation of the
abandonment.
*In re Gonzalez*, 302 B.R. 687, 691 (Bankr. C.D. Cal. 2003).  Plaintiff fails to provide any

Moreover, even if plaintiff could attack the trustee's abandonment of the YEA! mark in this Court, plaintiff fails to produce evidence upon which to conclude that ownership of the YEA! mark was, at any point, transferred to plaintiff.  An automatic stay "is the central provision of the Bankruptcy Code . . . . [It] protects debtors from harassment and also ensures that the debtor's assets can be distributed in an orderly fashion."  *In re Johnson*, 575 F.3d 1079, 1083 (10th Cir. 2009) (quotations omitted). "Relief from the stay normally restores the creditor to all of its pre-petition collections rights and remedies."  *In re Wright*, 300 B.R. 453, 466 (Bankr. N.D. Ill. 2003).  However, "an order lifting the automatic stay by itself does not release the estate's interest in the property."  *Catalano v. CIR*, 279 F.3d 682, 687 (9th Cir. 2002).  "Relief from the stay simply removes the bankruptcy restraints on a claimant's right to pursue contractual and non-bankruptcy remedies as to the matter in question."  *In re Cordry*, 149 B.R. 970, 973 (D. Kan. 1993).  Therefore, a bankruptcy court's jurisdiction over the debtor's property "is considered to be continuing until some action is taken which would necessitate the relinquishment of jurisdiction."  *Id.* at 974; *accord In re Forrest Marbury House Assocs Ltd. P'ship*, 137 B.R. 554, 556 (Bankr. D.D.C. 1992) ("Until the real property was sold at foreclosure sale, the real property remained property of the estate."); *In re Fricker*, 113 B.R. 856, 864 (Bankr. E.D. Pa. 1990) ("we do not believe that granting relief from the stay deprives a bankruptcy court of jurisdiction over that property"); *In re Prescott*, 402 B.R. 494, 501 (Bankr. D.N.H. 2009) ("While the estate retains an interest in property until it is no longer property of the estate, relief from the

basis upon which to conclude that any of the three circumstances is present in this case.

automatic stay allows a creditor to realize its security interest in the property.").

Although Adams Bank was granted relief from the automatic stay, the bankruptcy court's order cannot be construed as relinquishing all jurisdiction to property pledged in the security agreement.  Rather, Adams Bank was merely given permission to take whatever action it deemed necessary to foreclose and/or take possession of whatever subject property it wished.  *See In re Prescott*, 402 B.R. at 501.  Although the Agreement effectuated a voluntary transfer of the collateral described in the agreement, the Agreement's definition of "Collateral" is limited to those assets that were specifically described and the Agreement cannot, as plaintiff contends, reasonably be interpreted as transferring all AgriHouse assets that were used to secure the loans.  *See Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313 (Colo. 1984) ("Interpretation of a written contract is generally a question of law for the court").  Moreover, plaintiff's citation to Mr. Busby's affidavit does not create a genuine dispute of material fact in this regard.  Mr. Busby states that "no collateral was ever released from securing the Loans[,] the Collateral remained security for the loans[, and] all items of Collateral we had were released from the Automatic Stay in the Bankruptcy and were transferred to Loken-Flack, LLC."  Docket No. 53-2 at 3, ¶ 10.  Even when interpreted in the light most favorable to plaintiff, Mr. Busby's statement has no basis in law or fact.  As discussed above, the release of assets from the automatic stay does not automatically transfer all released assets to the creditor.  *See In re Cordry*, 149 B.R. at 973.  The only evidence in the record of a transfer of assets from AgriHouse to Adams Bank (or plaintiff) is the Agreement, which contemplates only those specifically mentioned patent rights.  Thus, Mr. Busby's affidavit provides no indication that the YEA! mark was legally acquired by

Adams Bank by contract, a foreclosure sale, or other repossession actions.  Plaintiff has therefore failed to produce evidence upon which to conclude that it has a protectable interest in the YEA! mark.

For the foregoing reasons, the Court will grant defendants' motion for summary judgment on plaintiff's claim for trademark infringement.

### B.  Declaratory Judgment

Plaintiff seeks an order declaring that it is the sole owner of the Registration and sole owner of the "Bank's Assets," acquired in the bankruptcy proceeding.  Docket No. 53 at 10, 12.[19]  Defendants seek summary judgment on plaintiff's claim for declaratory relief only with respect to ownership of the Registration.  Docket No. 52 at 7.  Although neither party addresses subject matter jurisdiction, the Court must satisfy itself as to its own jurisdiction, even if doing so requires *sua sponte* action.  *Citizens Concerned for Separation of Church & State v. City & Cnty. of Denver*, 628 F.2d 1289, 1297, 1301 (10th Cir. 1980).  Absent an assurance that jurisdiction exists, a court may not proceed in a case.  *See Cunningham v. BHP Petroleum Great Britain PLC*, 427 F.3d 1238, 1245 (10th Cir. 2005).  The Court first considers whether federal question jurisdiction, pursuant to 28 U.S.C. § 1331, exists over plaintiff's declaratory judgment claims.

---

[19]Plaintiff also requests that the Court direct defendants to "cease marketing and using the EPA Registration" and "cease using and marketing to relinquish all of those assets to Loken-Flack."  *Id.* at 10.  Although this appears to be a request for some type of injunctive relief, plaintiff fails to indicate the substantive law upon which its claim is based.  Moreover, plaintiff makes no attempt to satisfy the necessary factors.  *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57 (2010) (setting forth four-factor test for granting permanent injunctive relief).  Thus, to the extent plaintiff's motion can be construed as seeking injunctive relief, plaintiff fails to make the necessary showing and any such request is therefore denied.

The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction . . ., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). However, the Declaratory Judgment Act does not expand the jurisdiction of federal courts and cannot, by itself, serve as a basis for federal question subject matter jurisdiction under § 1331. *Nashoba Commnc'ns Ltd. P'ship No. 7 v. Town of Danvers*, 893 F.2d 435, 437 (1st Cir. 1990) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)). Rather, when a plaintiff brings an action for declaratory judgment based upon federal question jurisdiction,

> the position of the parties is often reversed: the plaintiff asserts a defense to an anticipated action by the declaratory judgment defendant. It is the character of the impending action, not the plaintiff's defense, that determines whether there is federal question jurisdiction. Thus, federal question jurisdiction exists in a declaratory judgment action if the potential suit by the declaratory judgment defendant would arise under federal law.

*Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 964 (10th Cir. 1996) (citations omitted). Accordingly, "federal question jurisdiction in this case turns on whether there would be federal question jurisdiction over the well-pleaded complaint that [defendants] may bring against [plaintiff]." *Id.*

The Court first turns to the declaratory judgment claim concerning ownership of the Registration. Defendants' anticipated action would likely consist of a state law contract dispute over whether AgriHouse and Mr. Stoner transferred their rights to the Registration prior to the commencement of the bankruptcy proceeding. *See* Docket No. 52 at 3, ¶¶ 8-10. Whether or not the pre-bankruptcy contractual transfer of the

Registration was effective does not implicate federal law.  Plaintiff may raise the bankruptcy court's sale of the Registration as a defense, "but federal-question jurisdiction does not lie as a result."  *See Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1211 (10th Cir. 2012) (affirming district court's dismissal of declaratory judgment complaint for lack of subject matter jurisdiction, in part, because defendant's anticipated state-law claims "do not *necessarily* raise a disputed federal issue").  Nonetheless, it is also possible that defendants would seek to challenge the EPA's decision to transfer the Registration to plaintiff, which, setting aside the question of whether such an claim would be an impermissible collateral attack on the agency's decision, would arise under 40 C.F.R. § 152.1 *et seq.*

However, even assuming that the Court has federal question jurisdiction and that an "actual controversy" is at issue,[20] which it does, a district court has "discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).  A district court must consider several case-specific factors when deciding whether to exercise its authority to issue a declaratory judgment.  *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir.

---

[20]In determining if an "actual controversy" exists, the Supreme Court noted that its previous decisions require

> that the dispute be definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks and alteration marks omitted).

2008). These factors, referred to as the "*Mhoon* factors," include:

> (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race to *res judicata*'; (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Id.* at 1248 (quoting *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)). These various "equitable, prudential, and policy arguments" weigh on the court's discretionary decision to either entertain or dismiss a declaratory judgment claim. *MedImmune*, 549 U.S. at 136.

Here, the primary reason given by the EPA for refusing the reconsider the transfer of the Registration was the bankruptcy court's order authorizing sale, indicating that the order of the bankruptcy court would be at issue. Additionally, resolving plaintiff's claim would require resolving the question of whether the Registration was actually part of the bankruptcy estate. Thus, the bankruptcy court appears best equipped to resolve disputes related to its own orders, whether or not the determination requires an examination of state law. *See In re Touch Am. Holdings, Inc.*, 401 B.R. 107, 117 (Bankr. D. Del. 2009) ("Various courts have concluded that matters requiring a declaration of whether certain property comes within the definition of 'property of the estate' as set forth in Bankruptcy Code § 541 are core proceedings."); *In re Schraiber*, 97 B.R. 937, 940 (Bankr. N.D. Ill. 1989) ("Bankruptcy Courts apply state law or any other relevant authority in making determinations of what is estate property."). Plaintiff does not argue otherwise. Moreover, so long as the bankruptcy is pending, it is not

clear that a declaratory judgment from this Court would provide plaintiff with the necessary relief or whether such an order would clarify any legal relations.  *See In re AE Liquidation, Inc.*, 435 B.R. 894, 904 (Bankr. D. Del. 2010) (rejecting argument that, in adversary proceeding, bankruptcy court no longer had jurisdiction to decide 11 U.S.C. § 541 claims as related to property no longer part of estate and finding that the bankruptcy court "has exclusive jurisdiction to determine whether or not the WIP Aircraft was property of the estate at the time of the sale").  The Court finds that the foregoing factors weigh against entertaining plaintiff's declaratory judgment claim.  Thus, the Court will exercise its discretion and dismiss without prejudice plaintiff's claim for a declaratory judgment concerning ownership of the Registration.

The Court next turns to the issue of ownership of the "Bank's Assets."  As discussed above, relief from the automatic stay does not itself effectuate a transfer of assets from the debtor, but instead entitles the claimant to pursue "contractual and non-bankruptcy remedies" in acquiring the debtor's assets.  *See In re Cordry*, 149 B.R. at 973.  Defendants' anticipated action would likely consist of a contract claim, requiring interpretation of the Agreement to determine which assets were voluntarily transferred, and a potential claim based upon other actions under state law, if any, that Adams Bank (or plaintiff) took to repossess AgriHouse assets – none of which would appear to arise under federal law or implicate the bankruptcy case.  Accordingly, the Court concludes that it lacks federal question jurisdiction over plaintiff's declaratory judgment claim concerning ownership of the "Bank's Assets."  Moreover, even if subject matter jurisdiction existed, for the above-stated reasons, an analysis of the *Mhoon* factors indicates that the bankruptcy court is best equipped to resolve this particular dispute

and weighs against entertaining this claim.

### C.  Remaining Claims

Having concluded that the Court lacks federal question jurisdiction over plaintiff's remaining declaratory judgment claim regarding the "Bank's Assets," the Court next addresses the issue of whether it should exercise jurisdiction over plaintiff's state law claims for intentional interference with potential business advantage, breach of contract, and breach of the covenant of good faith and fair dealing.  While courts may exercise supplemental jurisdiction over state law claims if there is otherwise a jurisdictional basis for doing so, 28 U.S.C. § 1367(c)(3) states that a court may decline to exercise jurisdiction over such claims if "the district court has dismissed all claims over which it has original jurisdiction."  When § 1367(c)(3) is implicated in the Tenth Circuit, courts are advised to dismiss pendent state law claims "'absent compelling reasons to the contrary.'"  *Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010) (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995) (reversing the district court's grant of summary judgment on state law claims); *Endris v. Sheridan Cnty. Police Dep't*, 415 F. App'x 34, 36 (10th Cir. 2011) ("any state-law claims for assault and battery or mental and emotional injury were inappropriate subjects for the exercise of pendent jurisdiction where all federal claims had been dismissed").  *But see Henderson v. Nat'l R.R. Passenger Corp.*, 412 F. App'x 74, 79 (10th Cir. 2011) (finding no abuse of discretion in trial court's decision to retain jurisdiction over state law claims after plaintiff voluntarily dismissed claims arising under federal law).  Finding no compelling reason here to retain jurisdiction, the Court will dismiss plaintiff's remaining claims without prejudice.

*See* Colo. Rev. Stat. § 13-80-111 (permitting claims properly commenced within the statute of limitations to be re-filed if involuntarily dismissed because of lack of jurisdiction); *Dalal v. Alliant Techsystems, Inc.*, 934 P.2d 830, 834 (Colo. App. 1996) (interpreting 28 U.S.C. § 1367(d) as tolling the statute of limitations while claim is pending in federal court); *see also City of Los Angeles v. Cnty. of Kearn*, --- P.3d ---, 2014 WL 3030368, at *3 (Cal. July 7, 2014) (noting that interpretations of § 1367(d) vary between jurisdictions).

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants' Motion for Partial Summary Judgment Pursuant to Fed. R. Civ. P. 56(c) [Docket No. 52] is **GRANTED** in part and **DENIED** in part as indicated in this order.  It is further

**ORDERED** that plaintiff's Motion for Summary Judgment [Docket No. 53] is **DENIED**.  It is further

**ORDERED** that plaintiff's Lanham Act claim for trademark infringement is **DISMISSED** with prejudice.  It is further

**ORDERED** that plaintiff's claims for declaratory judgment and plaintiff's state-law tort and contract claims are **DISMISSED** without prejudice.  It is further

**ORDERED** that the trial set for Monday, August 4, 2014 is **VACATED**.  It is further

**ORDERED** that, within 14 days of the entry of judgment, defendant may have its costs by filing a bill of costs with the Clerk of the Court.  It is further

22

**ORDERED** that this case is dismissed in its entirety.

DATED July 17, 2014.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge